Good morning. We are here in court to hear today's cases. The panel is Judge Easterbrook, who is here in the courtroom, Judge Kaney, who I trust is on the telephone, and myself, Chief Judge Wood, and counsel will be appearing by telephone. So our first case for this morning is Appeal No. 193034, C.Y. Wholesale v. Holcomb. So we will begin. Mr. Hudson, are you available? I am indeed, Your Honor. Well, you may proceed. May it please the Court, the 2018 Farm Bill sets out one thing states cannot prohibit, and Indiana law was recently amended to make crystal clear that it does not prohibit that one thing. And that's enough to resolve this case. In particular, the Farm Bill's single preemption provision bars states from prohibiting the transportation of lawfully produced hemp. Mr. Hudson, Mr. Hudson, before we get to a discussion of the merits, I have some concern about what is before us. Did the district court ever enter an injunction? Yes, Your Honor. In the state's view, the district court's failure to comply with the separate document requirement that this court has repeatedly— No, no, look, counsel, you can argue separately about the consequence of the lack of an injunction, but my initial question is, is there an injunction? I can't find one. Yes, Your Honor. The state's view is that there is an injunction notwithstanding the— There is language—counsel, there is language in an opinion. There is no injunction. Is the language at the end of the opinion consistent with the rationale of the opinion? In the state's view, no, it is not, Your Honor. For some reason, the district court's language at the very end of the opinion purports to prohibit the state from enforcing its The language at the end of the opinion appears to have very little to do with the court's rationale, which has to do with interstate transit of smokable hemp. Did anybody point this out to the district judge and ask her to fix it? No, Your Honor. We did not move to modify the preliminary injunction after the court's order, but we did make it clear to the court in our briefing that any injunction could be narrowly— Your briefing here is too late. The job of a post-judgment motion is to fix things that are easily fixable. There are two things that are easily fixable. One is there's been no compliance with Rule 65d, and the other is that the language at the end of the opinion appears to be totally unrelated to the district court's legal analysis. Those are easily fixable, but they're fixable by a district judge, not by us. This is Judge Wood. Maybe I might recommend, too, that we just pause a minute after each person speaks because of the lack of visual cues, but I had a similar concern in that it seemed to me that there could be an injunction here. I understand part of the district court's item here, the smokable hemp across the state, without simultaneously possessing it, but that's a much narrower concern than the language of this final Part 6 conclusion, which I realize is what the parties are treating as the injunction, and I just, for good measure, while I have the floor, will add that I'm not sure that this new statute cures all problems because it's qualified, too, but there is this preliminary problem about why the district court wasn't alerted by the state about potential overbreadth of the injunction or some of the other things you're now raising. So, two things that I'd like to say to that, Your Honor. First, the state's briefing on any injunction it issued needed to be narrowly tailored to the scope of federal preemption, so the arguments were made at the district court, and secondly, although the language at the end of the district court's opinion seems to be broader than its concerns about interstate transportation, the district court also accepted the plaintiff's argument about the Farm Bill's definitional provision, and there is at least an argument for enjoining the entire statute. But I think the missing step here, though, is addressing the district court's particular attention to the language, to the scope of the actual prohibition, I won't use the word prescribed here, and had that focus been accomplished at the district court level, for all I know, the district court either would have explained why the definitional issue drove such a broad injunction or why manufacture and financing are also part of what we don't have answers to. I agree, Your Honor, that it's possible to imagine the district court further elaborating on its analysis or even changing its mind. Well, that's the point. It could have changed its mind if this, you know, again, I can certainly recall many, many cases under the Controlled Substances Act where somebody's driving a some prohibited thing, cocaine or whatever, across the state of Indiana, and they're arrested, and one of the offenses they're charged with usually is possessing it. They're transporting it also, and maybe they're possessing it with intent to distribute, and they're doing other things. But there are aspects of the state's analysis that I think are quite weak. There are other aspects of the state's analysis that seem, you know, to make a valid point about the possibility of preserving transportation across the state without such a broad injunction. Yes, Your Honor, I think it's right that the district court could have changed its mind, but that's frequently the case in the context of preliminary injunctions. That is, after all, why they are preliminary, and the state is unaware of any case of this court that requires defendants to ask a district court to modify a preliminary injunction before seeking to reverse the preliminary injunction on appeal. Counsel, I'm sure that's true. The opportunity to point out problems to the district court is an opportunity rather than a duty, but we do have plenty of cases saying that if the litigants don't do that and we are left without a proper Rule 65 injunction, we will remand so that the district court can do the job right. Miller Coors is only the most recent of those. Why isn't that the right thing to do here? And I would add, particularly because you did give us the supplemental authority, I realize the state is going to argue that effective July 1st of this year, at a minimum we have a different case. Whether the restriction to licensed producers and licensed other people is compatible with the federal law, I don't know. What continuous transport means, I don't know either. If somebody were to stop and spend the night in Indianapolis on their way across the state, is that continuous? There are issues, but the district court would be in a good position to consider them. Two things in response to your question, Judge Easterbrook. First of all, Miller Coors itself recognized that the failure to comply with a separate document requirement is not jurisdictional, so it's not mandatory that the court remand to the district court to issue a separate order. Counsel, there may be some confusion here. It's in both briefs. The failure to comply with Rule 65 is not jurisdictional, but the Supreme Court is very careful to distinguish between jurisdictional rules and mandatory case processing rules. Rule 65 doesn't concern appellate jurisdiction, but it is nonetheless mandatory. It's not something that judges can just say, oh, well, we don't care about that today. There are many non-jurisdictional rules that are nonetheless mandatory, and the briefs seem to be of the view that jurisdictional and mandatory are the same thing. Well, Your Honor, we know that this court in auto driveway retained jurisdiction over the case, even though the district court failed to comply with a separate document requirement. Excuse me, Mr. Hudson. I just want to make clear, though, we have some cases in which the failure to comply with Rule 65D really honestly could be said not to have made any difference, but I thought we'd all agreed that Paragraph or Part 6 isn't one of those cases, that there are ambiguities, there's potential overbreadth, there are a lot of things that make it problematic. Now, if this had been a Rule 65D injunction, I quite agree with you. The state doesn't have to keep going back and pestering the district court to change it. You could take your 1292A1 appeal and here we'd be. But it isn't, and the question is whether this is a good substitute, even though maybe in other cases we did have a good substitute. On that, Your Honor, I think it's crucial to see that what this court has emphasized, for example, in auto driveway, what makes an order appealable is whether the defendant clearly understands what conduct is prohibited or required. And here, there's no ambiguity in the district court's opinion as to what conduct isn't allowed. It's very clear that the state is not allowed to enforce this mobile hem prohibition at all. Counsel, that's part of the problem. There's no ambiguity in the opinion. There's no ambiguity in the last paragraph. And the two of them are not consistent. Well, I certainly agree. I'm sorry, Your Honor. Let me move to a different topic, and that's the new legislation that's effective as of July 1. I'm concerned, and I assume my colleagues are concerned, about the fact that the new legislation allows transport through the state from one licensed dealer to another licensed dealer. What is the state's view about what happens when the dealers aren't licensed? I gather that states, that the federal system does not require states to license dealers. And, indeed, in your own- Your Honor- The language in the federal statute just says, no state or Indian tribe shall prohibit the transportation or shipment of hemp or hemp products and so on through the state. So I don't see anything about licensed people there. Your Honor, crucially, the SOAN, in the language you just quoted, is, I think, very important, that the federal statute specifically applies only to products, quote, produced in accordance with Subtitle G of the Agricultural Marketing Act of 1946, as added by Section 10113. And the practical upshot of that means that in order to be produced lawfully, either the hemp needs to be produced under a license issued under the prior regulatory apparatus, under the Farm Bill of 2014, or pursuant to a license issued by the federal government itself, or issued by a license issued by a state pursuant to 1396P. So the- Could you explain why- The federal statute doesn't apply to hemp in Texas completely. Why- It doesn't offer to produce hemp. I'm sorry. We've got some crosstalk here. I apologize for that. I'm not sure I followed it. But I know there is a federal licensing scheme which is available when states don't have a regulatory system. Is it your submission that every state that permits what Indiana calls smokable hemp has a domestic licensing system? Do we know that? No, Your Honor. Our submission is that either a state will have its own licensing system, or if it does not and it simply allows the production of hemp generally, then the federal government will license producers as a matter of federal law. Why? Suppose the state of Iowa says we're allowing the production of, we'll call it smokable hemp, even though Iowa may view it differently, and nobody needs a license. Is that a violation of some federal law? It is. I should say the state is not necessarily violating federal law, but the producers in that state will still need to comply with federal law. And one of the requirements will be to comply with the regulations that the U.S. Department of Agriculture promulgates pursuant to the 2018 Farm Bill, which include the licensing of producers. This is where you're losing me. I'll just try one more time. I see the option to get a license under federal law. I don't see the requirement to get one if the state says we are regulating this subject and we don't need a license. Where is the text? Well, there, Your Honor, the state's conduct is governed by 1396P, and that provision says that if a state wants to be more stringent than federal law, it doesn't need to get the approval of the federal government. But in the situation you're envisioning where a state isn't regulating at all, it's, of course, being less stringent than federal law, and 1396P says in that context you will need to get permission approval from the USDA. Well, it's not regulating via a licensure system, but that doesn't mean it's unregulated. States regulate things all the time without requiring licenses. That's true, Your Honor, and I think you certainly can imagine a circumstance. I think the state will acknowledge, but you can imagine a circumstance where Iowa designs a regulatory scheme for the production of hemp that's less stringent than federal law. They submit the plan to the USDA. The USDA approves that plan, and in that hypothetical circumstance of which the state is not aware of any, but it's at least conceivable that something like that could happen, in that circumstance, a producer producing hemp under that kind of regime, in the state's view, would qualify as a, quote, licensed producer for the purposes of Indy. No, it wouldn't be a licensed producer. It would just be a producer that doesn't need a license. Understood, Your Honor. I think that's certainly true, but I think the purpose of the Indiana law is clear. Let me interrupt both of you, please, and say that you are down to about two minutes. Judge Easterbrook, I believe, has one more question. Yes. Putting this question whether every state requires a license to one side, I have a question about whether there has been any or is impending any effort to ask the state judiciary to interpret this language. I could imagine saying that the new bill means license if one is required. Is that a permissible interpretation of the new legislation? In the state's view, yes. I suppose those are two questions, Your Honor. Yes, that's a permissible interpretation. That was the interpretation that I was getting at earlier. In response to your question about any active efforts to obtain clarification from the state courts, no, the state is not aware of any, and the state's not aware whether the plaintiffs in this litigation would be in a position to seek such clarification or whether they would need such clarification in the first place. In other words, whether they are a bank license. The state's not aware of that. All right. Why don't you reserve what remains for your rebuttal, and we will move on to the argument from Mr. Vink. Thank you, Your Honor, and good morning, and may it please the court. This is Paul Vink on behalf of CY Wholesale and the other appellees. I guess based on the colloquy that you just had with opposing counsel, I should start with the new legislation, if I may. As the court's aware, based on the April 3 filing in response to the state's supplemental authority, our position as appellees is that the new legislation does not cure the interstate transportation problem with the old legislation, and by old legislation I mean Senate Enrolled Act 516, which is actually what's before the court. I would point out just for the sake of the record that the new legislation is not even effective yet, and so we are in a regime right now anyway that is absent any of the new provisions in Section 335. But be it as it may, I think the bigger issue, and what we point out in our submission and what Your Honors have asked about this morning, is that the new legislation is at best incomplete and at worst extremely vague as to what it purports to allow. There are all kinds of scenarios, and Your Honors have asked questions this morning of my opposing counsel that indicate your understanding very well some of our concerns that what is a licensed producer, what is a licensed handler, there is no definition that applies certainly across all states, and fundamentally what Congress said very, very clearly in the 2018 Farm Bill is that states are not allowed to interfere with the transportation of hemp products. And hemp is defined in that 2018 Farm Bill explicitly as including all hemp extracts and derivatives. And Your Honors, that includes hemp bud and hemp flower, which Indiana has defined as smokable hemp. So the fact of the matter is this new legislation doesn't cure the violation of the express preemption provision. It still imposes restrictions on the transport of hemp. But can I ask you, Mr. Vink, this is Judge Wood. I'm going to move from the new bill back to the case that's actually in front of us, and maybe we'll invite you to address two things. One, the first topic that we discussed with Mr. Hudson, the lack of a formal Rule 65d injunction. But secondly, and I'm interested in digging into the content of that final paragraph of the district court's opinion and your view on how Congress's concern to preserve transportation and markets in that sense goes all the way to manufacture financing. This language, it's a stretch to call manufacture and financing transportation. You can finance something that's happening in India. You don't have to be transporting anything across the state of Indiana to finance it. And equally with manufacture, it seems that it's much closer to the production end of things, which the state is allowed to regulate, than it is to the transportation end of things. Yes, Your Honor. I certainly agree with that. I think the main area of disconnect that I have with the state on this issue is that the court, the district court in this case, was not solely concerned with express preemption based on this transportation issue. Yes, it was a big part of her order. We've all read the order. We all understand that it was a featured piece in her order. But she also accepted our conflict preemption argument. And our conflict preemption argument is based on the fact that the federal government, in the 2018 Farm Bill, defined hemp to include all extracts and derivatives. That encompasses hemp bud and hemp flower, which Indiana, in SEA 516, has declared to be illegal. So when I read the court's order, and I'm referring specifically, Your Honors, to pages 10 and 11. Actually, the conflict preemption section starts, I believe, on page 9 of the court's order. But the court discusses in quite some detail her concern that the 2018 Farm Bill was intended to destigmatize and legalize all low-THC hemp products. Could I just interrupt then and say, is it your position? I'm actually looking at page 13 of her order. But is it your position that the 2018 Farm Bill just flatly legalizes the very low THC, the less than 0.3% THC hemp, and that Indiana, by pulling hemp bud and hemp flower back into a criminal regime, is defying the federal statute? Yes, Your Honor. That is absolutely Applee's position. And that's based on the definition of hemp that Congress selected. Again, that includes all extracts and derivatives. It's also based on the conference report for the 2018 Farm Bill that explicitly says that states, quote, are not authorized to alter the definition of hemp or put in place policies that are less restrictive. I think, you know, taking that together and ‑‑ But you just said less restrictive. And what Indiana is saying is, well, we can still be more restrictive. That's right, Your Honor. But the sentence that I just quoted says that states are not authorized to alter the definition of hemp or put in place policies that are less restrictive. You mean more restrictive. So the floor, I believe, separates those two phrases and indicates a congressional intent not to have a patchwork of hemp emissions. Yeah, I'm sorry. Yeah, it's very hard since we lack visual cues. I'm puzzled by the assertion that states can't be more restrictive. Section 1639PA3A says about as plainly as one can imagine that states can be more restrictive. So what is the source of the rule that states can't be more restrictive? Yes, Your Honor. Thank you for that. And what you have referenced is commonly known as kind of the anti‑preemption provision. That's kind of colloquially what it's called. But that language, Your Honor, relates only to the production of hemp. It says very clearly, and you're exactly right, it's very unambiguous that states can regulate the production of hemp in ways that are more restrictive than the federal government. So the state of Indiana can say how many acres of hemp can be grown. It can say what kind of seeds can be utilized. Do you think the state of Indiana could prohibit production, flat‑out prohibit production of hemp? I believe it could, Your Honor, yes. I believe the state could say we will not allow farmers in this state to take advantage of the 2018 Farm Bill and grow hemp. I think that's the only fair way to read the congressional mandate in that anti‑preemption provision. But I have to emphasize the word production, and this is according to the United States Department of Agriculture, and we've cited this in our brief, that that relates to the growing of hemp. It doesn't mean that anybody who possesses it is somehow rendered a criminal. That's exactly what the 2018 Farm Bill was intended to prohibit by including smokable hemp and all other extracts and derivatives in the federal definition. Okay. So as you see it in this conflict preemption section, beyond just this express preemption for the transportation, that although Indiana can say we're not going to be in the hemp growing business, people throughout Indiana who want the low THC product made from this plant are protected under federal law, and the state can't reclassify low THC hemp as a controlled substance subject to criminal prohibitions. That's exactly right, Your Honor. The 2018 Farm Bill explicitly removed low THC hemp from the list of controlled substances. You know, again, there's legislative history we've cited in our briefs I won't go over that discuss the intent here was to give farmers another product that they can utilize to bring value to their farming operations. And they did not want, they being Congress, did not want states to have the ability to say you can't ship any hemp through our jurisdiction, and you can't, you know, produce this kind of hemp. I'm sorry, not produce. They can do that. That you're not, they don't want states to permit or to prohibit certain types of hemp products. That's within the definition. And Congress itself in the conference report said states, you have to leave the definition alone. Counsel, we, I hope we understand that a conference report is not law. Yes, absolutely. Statute is law. Absolutely. We're trying to figure out the meaning of the statute. And with that thought in mind, I was about to ask you something quite related to that, which is if we put to one side the various conference reports and other legislative background materials you've cited, why isn't it reasonable to think that manufacture is actually just part of the production process? You seem to have a very literal view of what production means, which is planting a seed and growing it in the field, and then everything else is something else. But why isn't manufacture at least reasonably understood to be within the scope of production? Yeah, fair question. I mean, you're quite right, Your Honor, that we do read production somewhat narrowly. That's consistent with the United States Department of Agriculture's interpretation that production refers to the growing of hemp and wouldn't extend to financing or manufacture and certainly not possession. So, you know, our interpretation, you know, takes the word production in an agricultural sense at face value and is consistent with the United States Department of Agriculture. And just to respond briefly to Judge Easterbrook's comment, I absolutely agree, Your Honor, that the conference report is not binding law. It's not the statute. But as Your Honors know very well, in a conflict preemption setting, what the court tries to do first and foremost is understand what was Congress attempting to do. And there's two sources of that. Obviously, you look at the language. That's where you start. And we've made the argument that the language itself includes the definition or in the definition includes extracts and derivatives. So we say that that's evidence of congressional intent. But in addition to that, we look at other materials, congressional statements and things of that nature to try to derive intent. I'm not arguing that the congressional report is a source of express preemption based on what it says. I'm simply saying it's the best indicator that we have of congressional intent in addition to the language. And it's consistent with the very broad definition of hemp that is adopted in the Farm Bill. Mr. Vink, with the removal of hemp from the schedule of controlled substances, is there anything in federal law that regulates the possession and use of hemp one way or the other? No, Your Honor. It really is something that the 2018 Farm Bill says this low THC hemp is legal. Look, there's no psychoactive effect. Well, it's just unregulated is what you're saying. It's just unregulated. The world is full of things. Well, it's unregulated at the federal level other than, again, as you're aware from the statute, states are encouraged to adopt plans and develop their own licensing requirements in certain ways. Counsel, let me make sure you understand where this question is coming from. Okay. You are treating the word production in the anti-preemption clause as meaning that states are preempted from regulating possession and use. But if federal law just doesn't cover those subjects, what is it that would preempt it? Federal law does not impose a speed limit, but states have speed limits. On one road I use frequently, the speed limit is 10 miles per hour. No one would say that's preempted by federal law. Isn't that the sort of argument that you are making here? In a way, yes, Your Honor, but it's a little bit broader than that. Our point is simply that the federal government did preempt any state from interfering in transportation. And possession or delivery, which are explicitly called out and prohibited in the statute before the court, clearly conflicts with that. So there's an express preemption there. But in addition to that, it is – Hang on a minute, counsel. Can we go back now to transportation through the state, the one thing on which there is a clear federal preemption? As you heard in the earlier questioning, and I certainly want to get to this before our time runs out, we're worried about the word licensed in the amended state statute. The question for you is, do any of your clients, do any of the plaintiffs here, claim to be people who lack licenses and as a matter of state law don't need them? Just to be clear, I'm worried about standing to contest the word licensing in that new statute. So, Your Honor, the answer is no. My clients do not need a license or have a license. The only folks in Indiana who need a license under the current statutory regime are people who are growing it, who are producing it. Look, counsel, maybe this is a problem with my question. The way the statute is worded, it says it's as of July 1. You can transport through Indiana smokable hemp from a licensed dealer in the origin state to a licensed dealer in the receiving state. Do we have in this case any plaintiffs or shippers or receivers who assert that they are not licensed and don't need them? No, that is not an issue in this case. Well, hang on a minute. I thought that you just said that your clients did not have licenses. And maybe one of the awkward things about this whole case is that the law is on the cusp of changing. And so the parties have not really had a chance to focus on this, to explore this in briefs. But if your clients do not hold licenses, then perhaps they are potentially people who would be excluded from the permission granted in the new law. That's exactly right, Your Honor. And if I'm not being clear, I apologize. To be as clear as I can, my clients do not hold licenses under Indiana law because that only applies to growers or producers, which my clients are not. So they are unlicensed. And I think arguably would be subject to, you know, whatever licensed producer, licensed handler means. Although I think in the context of this new statute, what the state is attempting to say is somebody that's licensed out of state. Exactly. Which is a bit complicated. Maybe there's just a difficulty in reading the statute. But I thought reading the statute that the people who had to be licensed were the producer and the recipient, not the transportation company. Am I misreading? I think that's a plausible reading. Again, I think fraught with peril given that those aren't defined terms and other jurisdictions may or may not have any sort of licensing requirements. But, again, you know, that is why we believe that this new statute doesn't actually cure any of the transportation preemption arguments. But I do want to just remind the court that setting that all aside and even if there is a standing issue, not conceding there is, but even if there was from a licensing standpoint, we still have the same conflict preemption problem that exists under the new statute as we did under the old. There's still an attempt to carve out part of the federal definition and say, we aren't going to allow that in the state of Indiana. And that's exactly what the federal government in the 2018 Farm Bill has said states cannot do. Counsel, this is Judge Keeney. Throughout this whole thing both argued by both counsels, it seems to me we have a lot of things that Judge Barker didn't consider, including the statute which was passed apparently after she issued whatever this is called. Wouldn't it be better to remand it and have her address and consider these matters? Well, Your Honor, obviously that is an option at the court's discretion. I don't believe on behalf of Appalese that the order that the court issued is in fact overbroad for the reasons that I've been discussing, and it goes beyond the express preemption piece. It's certainly true that the new legislation that was literally signed into law a couple of weeks ago was not before the court. It is certainly possible that the judge would, you know, consider the underlying issues and come to a different conclusion. I don't think she should for the reasons we've discussed. But, I mean, I believe that what's before the court now is Section 516. That's what we appealed. That's what the court had an opportunity to weigh in on. And based on express preemption and conflict preemption, her order, while it should have set out a separate injunction order, I acknowledge that and concede that, her order is clear that smokable hemp is not supposed to be carved out under Indiana law. Counsel, that's part of the problem, though. We're not talking about an injunction. We're talking about an order which rambles, not should say rambles, but tries to cover many issues, but not anything you can attack directly as the injunction. Yeah, and Your Honor, I understand that point. The conclusion section, I think, is quite broad and, at least to me, quite clear. And I understand there's some view that differs from that or that it's inconsistent with the order. I don't think it is. I think what the judge was intending to do was to say, look, the express preemption provision strikes down this statute. But in addition to that, we have a conflict preemption problem where the state's changing the definition. It can't do that. And because of that, anything that relates to smokable hemp, whether it's the financing, the manufacture, the possession, anything that relates to smokable hemp is inconsistent with the federal bill. Right, other than production. And it should be struck down. That was the argument that we made to the court, and ultimately I think her order reflects that. All right. I think we need to wrap this up now since we're two minutes over. So I will thank you for your argument, Mr. Vink. And, Mr. Hudson, you had about a minute left. Thank you, Your Honor. Just a couple quick points on the conflict preemption issue. Number one, it's worth noting that the U.S. Department of Agriculture's implementing regulations specifically recognize that states may prohibit the production and the sale of hemp. That's 84 Federal Register 58,540. And beyond that, the state, neither the state nor the plaintiffs have identified any case in which a federal court has preempted state law because of a definitional provision in a federal statute. The plaintiff's argument amounts to the idea that because Congress has legalized hemp as a matter of federal law, states are required to as well. And that's simply not the way preemption works. All right. Well, thank you very much. Thanks, Mr. Hudson. Thanks, Mr. Vink. The court will take this case under advisement.